❏ Original          ❏ Duplicate Original

# UNITED STATES DISTRICT COURT
### for the
### Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Search of ) | |
| *(Briefly describe the property to be searched* ) | |
| *or identify the person by name and address)* ) | Case No. 25-951M(NJ) |
| an Apple iPhone in a black case with a small crack in the ) | |
| lower right corner of the screen, mailed by ATF SA Loving ) | |
| to TFO Newport and arriving in Milwaukee 8/1/2025 ) | |

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To:     Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the _____Eastern_____ District of _____Wisconsin_____
*(identify the person or describe the property to be searched and give its location)*:

See Attachment A.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See Attachment B.

**YOU ARE COMMANDED** to execute this warrant on or before     8/15/2025             *(not to exceed 14 days)*
❏ in the daytime 6:00 a.m. to 10:00 p.m.     ☑ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to     Honorable Nancy Joseph     .
*(United States Magistrate Judge)*

❏ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
❏ for _____ days *(not to exceed 30)*     ❏ until, the facts justifying, the later specific date of _____ .

Date and time issued:     8/1/2025 @ 3:13 p.m.

City and state:     Milwaukee, WI

*Judge's signature*

Honorable Nancy Joseph, U.S. Magistrate Judge
*Printed name and title*

| **Return** | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of :

Inventory of the property taken and name(s) of any person(s) seized:

**Certification**

   I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

<u>**ATTACHMENT A**</u>

**Property to Be Searched**

1. "The Target Cell Phone", described as an Apple iPhone in a black case with a small crack in the lower right corner of the screen, mailed by ATF SA Loving to TFO Newport and arriving 8/1/2025**.**

## ATTACHMENT B

## Particular Things to be Seized

All records and information contained in the Target Cell Phone, more fully described in Attachment A, that relate to violations of Title 18 U.S.C. § 922(a)(1)(A), (Dealing Firearms without a License); 18 U.S.C. § 932(b)(2), (Straw Purchasing of Firearms); and 18 U.S.C. § 933(a)(1), (Trafficking Firearms),, involving Jazzmar EVANS, including but not limited to the following:

a. photographs, videos, or other media storage connected to the purchase, manufacture or sale of firearms;

b. any messages or communications using any medium or application relating to the manufacture, sale or purchase of firearms

b. any stored GPS location tracking/logging files that may provide evidence as to the targets' travels, and may provide evidence as to the location where the alleged illegal actions occurred;

c. types, amounts, and prices of firearms purchased or sold and any information related to source(s) of firearms or firearms parts;

d. any and all financial records connected to the purchase/sale of firearms;

e. any evidence of the proceeds of firearm trafficking activities, including photographs of United States currency or bank records or financial records; and

f. lists of firearm customers and/or sources and related identifying information;.

1. Evidence of user attribution showing who used or owned the Target Cell Phone at the time the things described in this warrant were created, edited, or deleted, such as logs,

2

phonebooks, saved usernames and passwords, documents, photographs, biometric information and browsing history;

2. Records evidencing the use of the Internet Protocol address to communicate with using the internet including:

a. records of Internet Protocol addresses used;

b. records of Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

This warrant authorizes a review of electronic storage media and electronically stored information seized or copied pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts.

# UNITED STATES DISTRICT COURT

for the

Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched*<br>*or identify the person by name and address)*<br><br>an Apple iPhone in a black case with a small crack in the<br>lower right corner of the screen, mailed by ATF SA Loving<br>to TFO Newport and arriving in Milwaukee 8/1/2025 | )<br>)<br>)<br>)<br>)<br>)<br>)    Case No. 25-951M(NJ) |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A,

located in the _____ Eastern _____ District of _____ Wisconsin _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

- ☑ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| Title 18, Sections 922(a)(1)(A),<br>933(a)(1), and 932(b)(2). | Dealing Firearms without a License; Trafficking Firearms; Strawpurchasing<br>Firearms |

The application is based on these facts:

See attached Affidavit.

- ☑ Continued on the attached sheet.
- ☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under
  18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

JONATHON NEWPORT (Affiliate)   Digitally signed by JONATHON NEWPORT (Affiliate)
Date: 2025.08.01 08:44:18 -05'00'

_____
*Applicant's signature*

Jonathon Newport (ATF TFO)
_____
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 41 by

_____ telephone _____ *(specify reliable electronic means)*.

Date: __8/1/2025__

_____
*Judge's signature*

City and state: __Milwaukee, WI__     Honorable Nancy Joseph, U.S. Magistrate Judge
_____
*Printed name and title*

AFFIDAVIT IN SUPPORT OF

AN APPLICATION FOR A SEARCH WARRANT

I, Jonathon Newport, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1.     I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property—a cell phone, more fully described below and in Attachment A—which are currently in law enforcement possession, and the extraction from that property of the electronically stored information described in Attachment B.

2.     I am a Task Force Officer with the Bureau of Alcohol, Tobacco, Firearms & Explosives and have been since November of 2024. I am tasked with investigating federal firearm violations, including possession of machine guns, straw purchasing of firearms, felons in possession of a firearm, and firearm trafficking. I have been a Police Officer for the Milwaukee Police Department and have been a Police Officer for over twelve (12) years. I am currently assigned to the Milwaukee Police Department's Special Investigations Division. I am assigned to the Violence Reduction Unit, responsible for aiding in investigations of crimes, such as, but not limited to: Homicide, First Degree Reckless Injury, First and Second Degree Recklessly Endangering Safety, Armed Robbery, weapon offenses, and drug dealing. I am primarily focused on investigating drug and firearm offenses, contrary to Wisconsin State Statute and USC. I have primarily investigated drug and firearm offenses for over twelve (12) years in various capacities, including federally as a Task Force Officer for the FBI and currently for ATF. I am considered an expert by court standards and have testified as an expert in court proceedings related to drug dealing of marijuana, cocaine, heroin, fentanyl and methamphetamine. I have been involved in the execution of at least 500 residential search warrants. I have been the affiant and assisted in firearm and drug search warrants to include: residential, forensic cell download/analysis, social media, cloud storage, GPS, and trap and trace to aid in investigations. I have attended various trainings regarding firearm and drug investigations to include:  Characteristics of Armed Gunmen, Non-Drug evidence, Detective

2

Development Course, Plain Clothes (Undercover) Training, Drug Expert Court Testimony, Undercover Operations in Cook County Criminal Justice System, Effective Investigative Techniques of Cellular Phones in Investigations, and the FBI's Understanding Investigative Techniques for Modern Communication Course.

3.　　　　The facts in this affidavit come from my personal observations, my training and experience, my review of documents, information obtained from other agents and witnesses. This affidavit is intended to show merely that there is probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

4.　　　　Based on the facts set forth in this affidavit, there is probable cause to believe that violations of Title 18 U.S.C. § 922(a)(1)(A), (Dealing Firearms without a License); 18 U.S.C. § 932(b)(2), (Straw Purchasing of Firearms); and 18 U.S.C. § 933(a)(1), (Trafficking Firearms); **and** have been committed, are being committed, AND will be committed by **Jazzmar C. Evans, D.O.B. 01-24-2000**. There is also probable cause to believe that the location information described in Attachment B will constitute evidence of these criminal violations and will lead to the identification of individuals who are engaged in the commission of these offenses.

5.　　　　Your affiant recently sought and obtained a warrant (25-M-479) to track and search a phone assigned the telephone number 214-995-7121.  As described more fully in paragraph 38 below, it is believed the phone targeted by this warrant is likely to be that phone—and therefore the probable cause described below largely mirrors that laid out in the application for 25-M-479.  However, out of an abundance of caution, I now seek this warrant, authorizing the search of a phone recovered from Jazzmar C. EVANS by ATF agents in Texas in July of 2025.


**PROBABLE CAUSE**


6.　　　　The United States, including **Bureau of Alcohol, Tobacco, Firearms & Explosives** is conducting a criminal investigation of **Jazzmar C. Evans, D.O.B. 01-24-2000** regarding possible violations of Title 18 U.S.C. § 922(a)(1)(A), (Dealing Firearms without a License); 18 U.S.C. § 932(b)(2), (Straw Purchasing of Firearms); and 18 U.S.C. § 933(a)(1), (Trafficking Firearms).

7.　　　　In April of 2025, Antonio Causey was arrested at his residence of 4149 North 22nd Street, Milwaukee regarding a residential search warrant executed at his residence. During a

search of Causey's residence, a Glock 29, 10mm pistol was discovered in Causey's bedroom. In a separate bedroom, two black metal Glock stamped machinegun conversion devices (MCD) were discovered. Causey was charged under Milw. Co. Court case 25CF1651, for felon in possession of a firearm and two counts of possession of a machinegun. On April 8, 2025, the Honorable Barry Phillips reviewed the criminal complaint, found probable cause and held Causey over for further court proceedings. Causey is a convicted felon from Milwaukee County Criminal Court Case 2012CF002797, for Robbery of a Financial Institution (Wis. Stats. 943.87), a class C felony.

8.      I applied for and was granted a state warrant to search Causey's cellular phone. I reviewed the forensic extraction of the device, which showed a text thread with the cell phone number of 254-343-3478 (herein referred to as TX). I observed the following:

9.      In December of 2024, Causey asked TX for a Glock 26. TX replied that it was gone and apologized. Causey asked if TX had anything else and TX stated a satin Beretta 92 that was nickel plated. Causey asked if it was old and TX said that it was new. TX said that he just ordered it on December 5, 2024 and TX was waiting to go get it from the gun store when it comes in. TX also said that he has a micro ARP kit on the way to him; TX needs to get the lower and put it together. Causey and TX go on to discuss a wide variety of guns which each of them had purchased, sold or built, or planned or considered purchasing, selling or building. Causey said that he is trying to not buy any more guns because Causey has 10 registered and Causey wants a few that are not registered now. Causey asked if TX had anything for him, after just informing TX that Causey wants "unregistered" firearms. TX responded by sending Causey photos, continuing to seek some firearm transaction. The two continued to discuss potential gun sales between them. TX said that he does not have a Wisconsin ID anymore because TX moved to Texas seven (7) years ago and just came back to Wisconsin. TX admitted that TX is going to Texas to get some guns and then coming back to Wisconsin in the next month. TX said TX is going to try to do that trip every month or two. TX said that TX has his "ltc" in Texas, so TX gets guns the same day. Causey told TX to let Causey know what TX comes back with, because Causey is always buying (guns). TX admits that TX is coming back with micro AR pistols, micro Dracos, and Glocks and admitted to Causey "that's all I sell really". Causey stated that was all Causey wants. TX told Causey that TX will be back with a couple of each next month (January of 2025). Causey told TX that Causey was going to reach out.

10.     I conducted an open search through Armslist of the aforementioned cell phone number of 254-343-3478. I observed that phone number is linked to the profile of a "Tyrell Brian's". I searched multiple law enforcement databases and have been unable to locate a "Tyrell Brian's" in Texas and Wisconsin. Based on that, I believe that "TX" is conducting firearm transactions under an alias.

11.     I subpoenaed and reviewed Armslist records relating to the "Tyrell Brian's" profile.  The billing information showed the name and an additional phone number associated with the user. The name of the user was identified as: Jazzmar Evans, of 1645 Flagstone in "Milwaukee, TX" 75068, phone number of 214-995-7121. I conducted a check through Law Enforcement databases, where I identified Evans as Jazzmar C. Evans (black male, 01-24-2000). I observed through the law enforcement records that Evans resided in Texas and in Milwaukee, corroborating the "TX" statements to Causey that Evans lived in Texas but moved back to Milwaukee. I conducted a search for any E-Traces linked to Evans. I observed on November 2nd, 2024, Evans purchased an Anderson Manufacturing AM-15, multi-caliber rifle (S/N 24129319) from Bass Pro Shops in Garland, Texas. On November 14, 2024 (12 days later), Dus Nye Mountgomerry Day (DOB: 05-28-99), of Little Rock, AR, was found in possession of a firearm in Mesquite, Texas. The E-trace also confirmed that Evans had his Carrying Concealed Permit in Texas, which also fits with the statements made by "TX".  Based on this corroboration I believe that "TX" who was texting with Causey is actually Jazzmar Evans.

12.     Your affiant is aware that because of the Concealed Carry permit, Evans is able to purchase firearms on the same day in the store in Texas, without waiting for a completed background check.

13.     I conducted a check of multiple purchases, which revealed the following: On August 28, 2024, Evans purchased a Smith and Wesson SD9VE, 9mm pistol (S/N FWZ0529) and a Glock 23, .40 pistol (S/N G40688), from G T Distributors Inc., 12610 Perimeter Rd, Dallas, Texas. On October 10, 2024, Evans purchased a Taurus PT111 G2A, 9mm pistol (S/N ACJ321257) and a Glock 17Gen5, 9mm pistol (S/N BMWU633), from G T Distributor Inc., 12610 Perimeter Rd, Dallas, Texas. On November 20, 2024, Evans purchased a Glock 17Gen5, 9mm pistol (S/N BSVX898) and a Glock 33, .357 pistol (S/N CFR835US), from G T Distributors Inc., 12610 Perimeter Road, Dallas, Texas. On April 9, 2025, Evans purchased a Romarm/Cugir Micro Draco, 7.62mm AR pistol (S/N 24PMD-59380) and a Romarm/Cugir Micro Draco, 7.62mm AR pistol (S/N 24PMD-58788), from Clear Path Enterprise LLC at 1742 Andrew Street,

Mesquite, Texas. On April 10, 2025, Evans purchased a Glock 22Gen4, .40 pistol (S/N AHWE129) and a Glock 17Gen5, 9mm pistol (S/N BSVX838), from G T Distributors Inc., 12610 Perimeter Rd, Dallas, Texas. On April 11, 2025, Romarm/Cugir Micro Draco, 7.62mm AR pistol (S/N R0424PMD62792) and a Zastava ZPAP92, 7.62mm rifle (S/N 292-118319), from Magnolia Armory LLC, from 10120 La Frontera Dr, Fort Worth, Texas. Evans purchases corroborated the "TX" statements regarding travelling to Texas to purchase firearms and selling them in Milwaukee, Wisconsin.

14. On July 19, 2025, I was notified that Jazzmar Evans purchased additional firearms in Texas. I received the firearm purchase paperwork. I observed that Evans purchased a Taurus PT111G2A 9mm pistol (S/N AEK766091) and a Glock 27 .40 pistol (S/N UUN103). On the firearm paperwork, a phone number was handwritten and appeared to describe Evans' phone number as 214-995-7521, but I know that Evans has a phone number of 214-995-7121. I conducted a check through a law enforcement database, which showed that Evans is still assigned the phone number 214-995-7121 as of July 24, 2025.

15. On July 22, 2025, I reviewed Armlist conversations from Evans' Armslist alias "Tyrell Brian's", which included over 70 listings. Those conversations showed the following:

16. On April 30, 2022, at 12:34:52 AM, Evans messaged, "<u>Hello I am in Milwaukee</u>".

17. On May 30, 2022, at 3:56:29 PM, Evans messaged, "Hi I can give you $1700 cash <u>I'm in Milwaukee Wisconsin I do not have my ccw yet Just moved here from Texas</u> so I still have my texas id but can show proof of residency and proof I can buy a gun I have several ffl transfer receipts I can bring along Can meet at district 4 police station"

18. On June 2, 2022, at 3:32:59 PM, Evans messaged a customer, "Yeah my mothers been a banker for many years and I just show her what it is before any deal goes She was also an <u>Sheriff here in Milwaukee Wisconsin</u> and down in McKinney Texas so all she would need is a phone number to see exactly who they were and where they actually was"

19. On June 21, 2022, at 1:17:53 AM, Evans messaged someone, "I've Never heard of an private party transfer only an bill of sale when selling privately When going through an ffl I know it's an 4473 that gets gun transferred in your name which I'm used to doing and ffl here are charging too much I'm used to paying $37.89 at my old ffl dealer in Allen Texas called Texas legends <u>Ask about jazz</u> and they'll tell you about me Was shopping for guns up there almost every other week.

20.     On December 15, 2024, at 9:25:33 PM, Evans messaged, "I'm in Milwaukee Wisconsin on the south side I'm available any time of the week I don't know if I'd be in Racine or not on Wednesday" followed by an address to meet at, which was "2950 S Chase Ave, Milwaukee, WI 53207 Target"

21.     On January 22, 2025, at 2:59:17 PM, Evans messaged a customer: "Fde goon 19 80p builder slide Fde frame Fde 33 round oem Glock mag Olight baldr mini with green laser match front sight Oem Glock lpk Oem Glock slide parts kit Steel suppressor height fiber optic sights (was an option to buy with slide for extra cash) Squirrel daddy stainless steel guide rod Tyrant cnc backplate AIMSURPLUS PREMIUM SERRATED TIN THREADED barrel Serpico strikeout gold flat faced trigger with polished trigger bar A little over $700 into it asking $720 or trades or trade with cash"

22.     On January 22, 2025, at 5:34:02 PM, Evans messaged a customer: "Fde goon 19 80p builder slide Fde frame Fde 33 round oem Glock mag Olight baldr mini with green laser match front sight Oem Glock lpk Oem Glock slide parts kit Steel suppressor height fiber optic sights (was an option to buy with slide for extra cash) Squirrel daddy stainless steel guide rod Tyrant cnc backplate AIMSURPLUS PREMIUM SERRATED TIN THREADED barrel Serpico strikeout gold flat faced trigger with polished trigger bar A little over $700 into it asking $720 or trades or trade with cash"

23.     On January 24, 2025, at 1:55:01 AM, Evans messaged a customer: "Fde goon 19 80p builder slide Fde frame Fde 33 round oem Glock mag Olight baldr mini with green laser match front sight Oem Glock lpk Oem Glock slide parts kit Steel suppressor height fiber optic sights (was an option to buy with slide for extra cash) Squirrel daddy stainless steel guide rod Tyrant cnc backplate AIMSURPLUS PREMIUM SERRATED TIN THREADED barrel Serpico strikeout gold flat faced trigger with polished trigger bar A little over $700 into it asking $720 or trades or trade with cash"

24.     On January 27, 2025, at 7:03:10 PM, Evans messaged a customer: "Fde goon 19 80p builder slide Fde frame Fde 33 round oem Glock mag Olight baldr mini with green laser match front sight Oem Glock lpk Oem Glock slide parts kit Steel suppressor height fiber optic sights (was an option to buy with slide for extra cash) Squirrel daddy stainless steel guide rod Tyrant cnc backplate AIMSURPLUS PREMIUM SERRATED TIN THREADED barrel Serpico strikeout gold flat faced trigger with polished trigger bar A little over $700 into it asking $720 or trades or trade with cash". The customer told Evans that they could buy a new one for $450.

Evans replied that there is not one like his and that he could provide the build list. On March 26, 2025, at 1:12:08 PM, the customer offered 300. Evans stated, "**Sold 9 of these in the past 2 months and all were $800 I've not gone any lower**".

25.    On January 30, 2025, at 4:45:06 PM, Evans messaged a customer: "Fde goon 19 80p builder slide Fde frame Fde 33 round oem Glock mag Olight baldr mini with green laser match front sight Oem Glock lpk Oem Glock slide parts kit Steel suppressor height fiber optic sights (was an option to buy with slide for extra cash) Squirrel daddy stainless steel guide rod Tyrant cnc backplate AIMSURPLUS PREMIUM SERRATED TIN THREADED barrel Serpico strikeout gold flat faced trigger with polished trigger bar A little over $700 into it asking $720 or trades or trade with cash"

26.    On February 1, 2025, at 10:55:24 PM, Evans messages a customer: "Fde goon 19 80p builder slide Fde frame Fde 33 round oem Glock mag Olight baldr mini with green laser match front sight Oem Glock lpk Oem Glock slide parts kit Steel suppressor height fiber optic sights (was an option to buy with slide for extra cash) Squirrel daddy stainless steel guide rod Tyrant cnc backplate AIMSURPLUS PREMIUM SERRATED TIN THREADED barrel Serpico strikeout gold flat faced trigger with polished trigger bar A little over $700 into it asking $720 or trades or trade with cash"

27.    It appears that these messages relate to Evans making and selling "ghost guns." I know, based upon my training and experience, that with the proper knowledge, computer software and machining equipment, individuals are able to manufacture both semi-automatic firearms and fully automatic machineguns from scratch. These firearms can be manufactured with the use of lathes or computer numerical controlled (CNC) milling machines, which are digitally automated machining devices capable of cutting and fabricating solid materials (including firearms parts) through a reductive (which is also known referred to as a "subtractive") manufacturing process. Firearms can also be manufactured using additive manufacturing processes that utilize 3D printers with associated software programs and materials such as either plastic filament (including acrylonitrile butadiene styrene or "ABS") or metal filament. I am aware that 3D printers capable of producing firearms or firearm parts using ABS filament material are readily available on the consumer market and can be purchased for as little as $200.00. With this type of equipment, a subject can manufacture firearms that perform as well as those created by licensed manufacturers. Additionally, because unlicensed individuals are not subject to the federal requirements applicable to licensed

manufacturers (which include requirements for serial numbers and other markings), these individuals can manufacture firearms without any identifying markings, or can place on the firearms any type of markings they desire. I know that privately made firearms (PMFs), including privately made frames and receivers, are firearms that have been completed, assembled or otherwise produced by a person other than a licensed manufacturer. Privately made firearms are also made without a serial number placed by a licensed manufacturer at the time the firearm was produced. I know that privately made firearms are commonly referred to as "ghost guns" because they are not subject to the record-keeping requirements that govern licensed manufacturing and dealing, and thus are difficult to track. Investigating crimes involving un-serialized privately made firearms can be challenging for law enforcement officials in tracing the origins of firearms and linking them to related crimes.

28.     On February 1, 2025 and February 26, 2025, Evans had a conversation with "ILOVEPIZZA24" (hereinafter "Pizza"). Evans wanted to purchase a firearm from Pizza, but could not agree on a price. The conversation carried to February 26, 2025, when Evans wanted to pay $800. Pizza re-negotiated and Evans agreed to pay $1000. Evans told Pizza that he needed two weeks to sell another micro ar pistol, but they sell pretty quick. Pizza offered to sell his gun for cheaper and the micro ar pistol. Evans replied, "Yeah, I couldn't do it I been selling these for years for $800". Evans followed up with, "I still have 3 people I need to build on for" and "all for $800". Evans and Pizza could not seem to settle on the background check, because Evans stated he did not want a background check and wanted to do a private sale. On March 2, 2025, at 3:16:40 AM, Evans messaged Pizza, "I do want it however have to give me a little time to sell this rifle I bought or I'll just wind up selling this micro 4.5 556 ar pistol to my cousin because he's buggin me about it I just put it together today"

29.     On February 15, 2025, at 1:18:06 AM, Evans messaged a customer, "No problem I have an $550 buyer for it tomorrow and gonna just use the money to go to Texas"

30.     On March 3, 2025, at 6:59:19 PM, Evans messaged, "I have an Texas ccl I've been here since November and plan on going back to Texas by the end of the year…"

31.     On March 3, 2025, at 5:56:49 PM, Evans messaged, "I'm down town south side of mileaukee" and "Nice I can meet you here 620w Oklahoma ave Milwaukee wisconsin 53215"

32.     On March 10, 2025, at 10:58:45 PM, Evans messaged Pizza, "Will pass the ar I just sold my micro I'm just about to go put cash on card and order micro Draco and pick up in Texas though"

33.     On March 26, 2025, at 9:33:21 AM, "Eagle Eye Security" sent Evans a message stating, "$600?". Evans replied, "Sold 9 of these in the past 2 months and all were $800 I've not gone any lower".

34.     On April 2, 2025, at 8:29:32 PM, Evans messaged "Not_theATF" and stated, "I have 2 guys for $920 I have one guy for $1K I have an ak and cash trader offer I have an g21 gen 4 and g23 gen 3 trade offer I have an full custom g17 gen 5 trade offer I have an vska trade offer I have an $800 cash offer I have an $650 cash offer I have an Glock 30 gen 4 trade offer Forgot the others Taking it with me to Texas to sell it".

35.     Based on his statements on Armslist, including those above, it appears that Evans is making and selling PMFs, perhaps as many as "**9 of these in the past 2 months".**

36.     Your affiant has reviewed ATF records of purchases made by Evans which show him purchasing 23 firearms from FFLs since 2021 (including 22 since 2024). Six of those firearms, or approximately 26% have been recovered by law enforcement to date at six different crime scenes from five different individuals. The shortest time to crimes include just 12 days (for an Anderson AM-15 multi-caliber rifle, serial number 24129319 which Evans purchased November 2, 2024, but was recovered by law enforcement on November 14, 2024 from an individual with the initials DNMD) and 14 days (for a Glock 20, 10mm pistol which Evans purchased June 8, 2025 which was recovered by law enforcement on June 22, 2025 from the same DNMD). Three of the other recoveries occurred within three months of Evans' purchase. The recovered weapons were found in Mexico (1), Wisconsin (1) and in Texas (4).

37.     Based on the above information, I believe Evans is engaging in the business of firearms without the proper license, is trafficking firearms and is straw purchasing firearms. Specifically, the large quantities of firearms purchased, including the firearms that Evans' mentioned purchasing and selling to include Glocks, Dracos and AR pistols and the number of firearms recovered at crime scenes, particularly the several with short time to crimes- are all indicative in my experience of these crimes. Additionally, this suspicion is corroborated by Evans' own statements on Armslist, described above—boasting about the number of sales he has completed and expressing reluctance to complete certain paperwork.

38.     On July 31, 2025, I was advised by ATF Special Agent Aaron Loving of Texas, that Jazzmar Evans was contacting a local police department to obtain firearms that were recently seized by local law enforcement in Texas. Evans was calling the police utilizing the phone number of 214-995-7121 to contact law enforcement, corroborating that phone number

being in the possession and utilized by Evans. ATF SA Loving met with Evans at the local Police Department and obtained Evans' license to carry (LTC AKA CCW), which will make it more difficult for Evans to purchase firearms in Texas without a routine background check. Additionally, during the interaction between Evans and ATF SA Loving, Loving obtained the cellular phone Evans was carrying. (Described herein as: "the target cell phone"). SA Loving provided me with the phone details, which Evans phone was identified as an Apple iPhone with two rear cameras, inside of a black case with a small crack in the lower right corner of the screen. ATF SA Loving sent the iPhone through FedEx overnight to TFO Newport, to arrive on August 1, 2025, in the jurisdiction of the Eastern District of Wisconsin.

39.     I believe that based on the investigation, that a search through Evans' iPhone, more particularly described below, will reveal additional evidence of Firearm Trafficking, including the identity of purchasers of Evans' firearms, along with conversations of the orders for purchases by Evans.

**TECHNICAL TERMS**

40.     Based on my training and experience, I use the following technical terms to convey the following meanings:

    a.   Wireless telephone:  A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals.  These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones.  A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone.  In addition to enabling voice communications, wireless telephones offer a broad range of capabilities.  These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

    b.   Digital camera:  A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film.  Digital cameras use a variety of fixed and removable storage media to store their recorded images.  Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader.  Removable storage media include various types of flash memory cards or miniature hard drives.  Most digital cameras also

include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

c.  Portable media pl ayer: A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files. However, a portable media player can also store other digital data. Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data. Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

d.  GPS: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

e.  PDA: A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments or notes) and utilizing computer programs. Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail. PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can store any digital data. Most PDAs run computer software, giving them many of the same capabilities as personal computers. For example, PDA users can work with word-processing documents, spreadsheets, and presentations. PDAs may also include global positioning system ("GPS") technology for determining the location of the device.

f. IP Address: An Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet. An IP address is a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178). Every computer attached to the Internet computer must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination. Most Internet service providers control a range of IP addresses. Some computers have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

g. Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

41.     Based on my training, experience, and research, and from consulting the manufacturer's advertisements and product technical specifications available online at www.samsung.com, I know that the Target Cell Phone has capabilities that allow it to serve as a wireless telephone, digital camera, portable media player, GPS navigation device, and PDA. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

**ELECTRONIC STORAGE AND FORENSIC ANALYSIS**

42.     Based on my knowledge, training, and experience, I know that cellular telephones can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

43.     *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Target Cell Phone was used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the Target Cell Phone because:

44.     Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

45.     Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

46.     A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

47.     The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

48.     Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

49.     *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the Target Cell Phone consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

50.     *Manner of execution.* Because this warrant seeks only permission to examine devices already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## <u>CONCLUSION</u>

51.     Based on all of the aforementioned information as well as my training and experience and the investigation to date, your affiant believes there is probable cause to search the Target Cell Phone, more fully described in Attachment A, for evidence of EVANS' violations of Title 18 U.S.C. § 922(a)(1)(A), (Dealing Firearms without a License); 18 U.S.C. § 932(b)(2), (Straw Purchasing of Firearms); and 18 U.S.C. § 933(a)(1), (Trafficking Firearms), as more fully set forth in Attachment B.

## <u>ATTACHMENT A</u>

**Property to Be Searched**

1. "The Target Cell Phone", described as an Apple iPhone in a black case with a small crack in the lower right corner of the screen, mailed by ATF SA Loving to TFO Newport and arriving 8/1/2025**.**

**ATTACHMENT B**

**Particular Things to be Seized**

All records and information contained in the Target Cell Phone, more fully described in Attachment A, that relate to violations of Title 18 U.S.C. § 922(a)(1)(A), (Dealing Firearms without a License); 18 U.S.C. § 932(b)(2), (Straw Purchasing of Firearms); and 18 U.S.C. § 933(a)(1), (Trafficking Firearms),, involving Jazzmar EVANS, including but not limited to the following:

      a.      photographs, videos, or other media storage connected to the purchase, manufacture or sale of firearms;

      b.      any messages or communications using any medium or application relating to the manufacture, sale or purchase of firearms

      b.      any stored GPS location tracking/logging files that may provide evidence as to the targets' travels, and may provide evidence as to the location where the alleged illegal actions occurred;

      c.      types, amounts, and prices of firearms purchased or sold and any information related to source(s) of firearms or firearms parts;

      d.      any and all financial records connected to the purchase/sale of firearms;

      e.      any evidence of the proceeds of firearm trafficking activities, including photographs of United States currency or bank records or financial records; and

      f.      lists of firearm customers and/or sources and related identifying information;.

      1.      Evidence of user attribution showing who used or owned the Target Cell Phone at the time the things described in this warrant were created, edited, or deleted, such as logs,

2

phonebooks, saved usernames and passwords, documents, photographs, biometric information and browsing history;

2. Records evidencing the use of the Internet Protocol address to communicate with using the internet including:

a. records of Internet Protocol addresses used;

b. records of Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

This warrant authorizes a review of electronic storage media and electronically stored information seized or copied pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts.